# Richmond

## JAMES T. POWELL v. MARY HOLLAND, JOHN H. WATSON, AND OTHERS.

January 11, 1934.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Mapp & Mapp* and *Herbert Barnes,* for the plaintiff in error.

*George L. Doughty, Gunter & Gunter* and *J. Harry Rew,* for the defendants in error.

HUDGINS, J., delivered the opinion of the court.

Plaintiffs instituted this action in ejectment, alleging that they were the owners of a certain tract of land situated on Chincoteague Island in Accomac county, and that James T. Powell was in possession thereof and refused to surrender the same to them. From a judgment in their favor James T. Powell sought and obtained this writ of error.

The decision of the case turns upon the construction of the will of William T. Watson, dated April 12, 1858, which is as follows:

"In the name of God, amen. I, William T. Watson, being sound of mind and memory, declare this my last will and testament utterly revoking all others heretofore made by me.

"Item 1st. I loan unto my son, Jesse R. Watson, the tract of land whereon I now reside (excepting a small parcel on the eastern side, as will hereafter be set forth) to hold during his natural life and at his death to his lawful heirs. If he should not have any children living at his death it then

shall go to his brother, George C. W. Watson, and if he should die without issue, then to his sister, Emily J. Watson, and if they all should die without issue, then I leave it to the nearest relative from whence it was inherited by me. Item 2nd. I loan unto my son, George C. W. Watson, the land from the eastern boundary to the land whereon I now live westerly to the eastern edge of the glade that lays to the eastward of my back lot fence to be inherited from him and managed in the same manner as above stated to my other son. Item 3rd. I loan unto my daughter, Emily J. Watson, the tract of land adjoining Robert Watson and William Risley to hold in the same manner as left to my other two children. Item 4th. I give unto my son, Jesse R. Watson, one old desk, also the one-half of a grey *mair* and the other half of the grey *mair* I give unto my son, George C. W. Watson. Item 5th. I leave my wife, Elizabeth Watson, to be supported out of my property equally with my children until they arrive at age and then one-third to be set off as her dower so long as she lives, provided she remains my widow—but if she should marry it is my desire that all of my property shall be given to my children. Item 6th. I leave Crippen Bowden, Sr., to be my sole executor and desire him at my death to expose at public sale all of the residue of my personal property and after paying my legal debts to retain in hand the balance for the use and necessary support of my children and wife if she does not marry until the youngest of my children shall arrive at twenty-one years of age, and then if *their* should be anything remaining in hand to be equally distributed among my children. I also request my executor (Crippen Bowden) to rent out or lease any of my lands as he thinks the most advantageous for my wife and children, but to use no timber in any case whatever, only such as will be needed by my wife and children for fire wood until my children each shall arrive at lawful age. In testimony whereof I hereunto set my hand and seal this the 12th day of April, A. D. 1858."

The testator died a few weeks after the will was exe-

cuted and his son, George C. W. Watson, predeceased him. His widow, Elizabeth Watson, renounced the provision for her, claimed her dower in the real estate, and a few years thereafter remarried.

It is admitted that the land in question was embraced in the first item of the will and passed to Jesse R. Watson; that shortly after reaching twenty-one years of age, on June 2, 1873, he conveyed it by deed purporting to pass a fee simple title to Robert Watson, through whom James T. Powell, grantee in a special commissioner's deed dated November 13, 1923, claims title, and that Jesse R. Watson died in November, 1931, leaving plaintiffs, his children and heirs at law.

Both sides agree that the single question to be determined is, whether under the first item of the will Jesse R. Watson received an estate for life, or a fee simple title to the land described therein. The answer to this question depends upon the intention of the testator. In ascertaining this intention, the language used and the sense in which it was used is the primary source of information. This part of the will, considered alone, needs no interpretation:

"I loan unto my son, Jesse R. Watson, the tract of land whereon I now reside (excepting a small parcel on the eastern side, as will hereafter be set forth) to hold during his natural life and at his death to his lawful heirs. If he should not have any children living at his death it then shall go to his brother, George C. W. Watson, and if he should die without issue, then to his sister, Emily J. Watson, and if they all should die without issue, then I leave it to the nearest relative from whence it was inherited by me."

Under this provision, it is clear that the testator intended to give to his son, Jesse R. Watson, a life estate in the property described, with a remainder to his children surviving him, and in the event he died leaving no children surviving there was a specific gift over.

Plaintiff in error contends that the following lan-

guage—"if she (the widow) should marry it is my desire that all my property shall be given to my children"—upon the marriage of the widow converts the life estate into a fee simple estate. With this contention we cannot agree.

If the language quoted be literally construed, then a fee simple title passed to the children, jointly, the moment the widow remarried. Such a construction would give no effect to the rather painstaking care with which the testator divided all his real property in items 1, 2 and 3. From the language there used, it seems clear that he did not intend for any child to have any interest in that real estate which he described and devised to another, except in the event such child died leaving no issue. From the language used in items 5 and 6 it seems equally clear that so long as the widow remained unmarried and until the youngest child reached the age of twenty-one, the entire income from the real property was charged with the support and maintenance of the widow and the children, and for this purpose full possession and enjoyment of the estate devised to each child was postponed. In the event the widow remarried, the income from the real property was relieved of this charge, and on the happening of that event each child became entitled to the full possession and enjoyment of the estate theretofore devised to him. To construe the language quoted as passing a fee simple title to the real property described would upset the general plan and purpose of the testator, gathered from the whole will.

■ "Isolated clauses or sentences are not to be considered by themselves, but the will is to be considered as a whole, and its different clauses and provisions examined and compared, so as to ascertain the general plan and purpose of the testator, if there be one." *Conrad* v. *Conrad's Ex'r,* 123 Va. 711, 97 S. E. 336, 338.

■ The following facts show that when James T. Powell purchased the land, he had actual knowledge of plaintiff's rights and only paid for what he got—*i. e.,* the life interest therein of Jesse R. Watson.

In 1912 a part of the land described in item 1 was taken

by the town of Chincoteague in a condemnation proceeding instituted for the purpose of widening and straightening its streets. The parties to the condemnation proceeding were Cornelius F. Coffin, a non-resident, the then record owner, and the plaintiffs in this cause. The report of the surveyor appointed in that cause shows that Cornelius Coffin, or his heirs, was represented by James T. Powell, that Powell was the lessee then occupying the storehouse on the property, and that he appeared in the proceeding by an attorney. The matter was referred to a commissioner in chancery to ascertain and report who was entitled to the damages allowed. The commissioner, in his report to the court, stated that "James Powell, alienee of James S. (Cornelius F.) Coffin, who was an alienee of Jesse R. Watson, is entitled to an estate for the life of the said Jesse R. Watson," and that the Watson heirs, plaintiffs in this cause in the trial court, were entitled to the damages allowed, subject to the life estate of Jesse R. Watson. This report was confirmed by an order of the court, but for some reason the $50 allowed for damages to the property was never distributed.

The property, by mesne conveyances, passed from Cornelius F. Coffin to Amelia J. Lankford, who died intestate in January, 1923. James T. Powell was one of the heirs of Amelia J. Lankford and was a party to the suit of *Purnell, etc.,* v. *Lynch, etc.,* instituted for the purpose of settling her estate. The matter was referred to a commissioner in chancery to determine of what real estate Amelia J. Lankford died seized and possessed, its fee simple and annual value, and whether the title owned by her was a fee simple or a life estate, "and if for life, contingent upon the life of whom." This commissioner proceeded to hear evidence and James T. Powell testified, in part, as follows:

"Q. This storehouse is built on the Jesse Watson land, is it not?

"A. Yes, sir.

"Q. By which I mean the land in which Jesse Watson had a life estate?

"A. That is what I hear, yes."

The testimony in the case shows that the fee simple value of the property was $3,500; that Amelia J. Lankford did not own a fee simple title, but owned the land subject to the life estate of Jesse R. Watson, which interest was worth $1,200. The commissioner reported "that the land * * * is a part of the entailed Watson property, and the same belongs to Jesse Watson for life, with remainder to his children, as will appear from the will of William T. Watson." This report was confirmed by the court and a special commissioner was appointed to make sale of the property, at which sale James T. Powell became the purchaser at the price of $1,000.

We deem it unnecessary to determine whether the construction placed upon the will of William T. Watson in these two proceedings is *res adjudicata* and do not refer to them for that purpose. However, the construction placed upon the will by different learned judges of the Circuit Court of Accomac county is at least persuasive. We are of opinion that the will itself, independent of the construction placed thereon by the circuit court judges, reveals that it was the intention of the testator to give to his son, Jesse R. Watson, a life interest only in the real property devised to him.

*Affirmed.*

GREGORY, J., dissenting.